### BENJAMIN F. BUTLER *vs.* CITY OF CHARLESTOWN.

A city, whose charter and ordinances provide that no contract shall be binding on the city, unless made by some authorized agent, and within some appropriation for the purpose, is not liable for legal services, beneficial to the city, performed by counsel retained by a majority of the members of the board of aldermen, without any official action of the city council or of either branch thereof; although the usage of the city has been to pay such bills approved by a committee of either board, without any formal vote.

ACTION OF CONTRACT by a counsellor at law to recover for professional services in the case of the mandamus against the Mayor and Aldermen of Charlestown, 2 Gray, 84. Trial before *Metcalf,* J., who reported the case, after a verdict for the plaintiff, to the full court, in whose opinion the substance of the evidence is stated.

At the trial, the counsel for the defendants asked the court to instruct the jury, " First, that the defendant city cannot be deemed, in a legal sense, a party to the mandamus suit; Second, that the respondents in said suit could not legally retain and employ counsel at the expense of the defendant city, unless by the formal action or vote of the board of mayor and aldermen,

at a regular legal meeting; Third, that the board of mayor and aldermen, being only one coördinate branch of the city government of Charlestown, could not, by its separate action, retain and employ counsel in the mandamus case at the expense of the defendant city; Fourth, that the individual members of the board of mayor and aldermen, being the respondents in said mandamus suit, could not retain and employ counsel in the same at the expense of the defendant city."

The court declined so to rule; and, at the request of the plaintiff's counsel, instructed the jury, " that to charge a city or town for services, an express vote to engage or pay for them is not necessary; that a municipal corporation may contract through agents; and the authority of the agents may be direct, by vote, or implied, from the customary and usual mode of transacting business in the town or city, known to and sanctioned by the town or city government; that if, in this case, the services rendered by the plaintiff were beneficial to the city of Charlestown in a municipal concern, in which important rights and interests of the city were involved, if those services were engaged on behalf of the city by the majority of the board of mayor and aldermen, acting in their official capacity, and if, by the established usage and practice in the city, the persons who engaged those services were authorized to engage and contract for them, the jury would be authorized to find for the plaintiff for the value of those services."

*P. W. Chandler & H. G. Hutchins,* for the defendants.

*E. R. Hoar,* for the plaintiff.

THOMAS, J. This is an action of contract to recover compensation for professional services alleged to have been rendered for the defendant in the year 1854. No question is made as to the value of the plaintiff's services, or the price charged; but the defendant says, the plaintiff was not employed by and did not work for the city.

By the seventh section of the *St.* of 1854, *c.* 433, entitled an act for the annexation of Charlestown to Boston, it was provided, among other things, that the mayor and aldermen of Charlestown should call meetings of the legal voters to vote

upon the acceptance of said act; and if, upon the returns, it appeared that a majority of the votes was in favor of its acceptance, it was made the duty of the mayor and aldermen to certify said returns to the secretary of the Commonwealth.

Such meetings were called and held. A majority of votes was in favor of acceptance. A meeting of the board of mayor and aldermen of Charlestown was held, the board consisting of the mayor and six aldermen. Four of the aldermen (being a majority) refused to sign the certificate to the secretary of the Commonwealth, on the ground of the invalidity of the act of annexation. An alternative writ of mandamus was issued from this court to the mayor and aldermen. The mayor and two of the aldermen signified by their answer their willingness to sign; the majority set forth their reasons of refusal. The questions of law were argued before the whole court on behalf of the mayor and two of the aldermen, by counsel retained and paid by them individually; by this plaintiff, for the four aldermen refusing to sign. No question can be made that the services of the plaintiff were, in the result, eminently useful to the city; that it was of the utmost importance to the municipal corporation and its citizens to have the questions affecting the validity of the act of annexation raised and determined at the earliest possible moment. But the question is whether the plaintiff was retained by the city, or by the four aldermen in their individual capacities.

The city council of Charlestown consists of two boards; the board of mayor and aldermen, and the common council. The plaintiff was not employed by any vote of the city council, or by any vote of the board of mayor and aldermen, or by any vote of the common council. There was no official action of either branch of the city government upon the subject. There was no meeting of either branch, in which the question of retaining counsel was a matter of consideration. He was not employed by any committee of either branch. There was no appropriation by the city council for the employment of any counsel in the cause. Giving the fullest effect to the evidence, all that is shown is that he was employed by the four aldermen

by an act in the country and wholly unofficial, and that he understood he was employed for the city. There is no vote or act of the city council, or of either branch, ratifying the act of the four aldermen.

By the eighth section of the city charter, St. 1847, c. 29, the executive power of the city and the administration of police, with all the powers theretofore vested in the selectmen of Charlestown, are vested in the mayor and aldermen; all other powers vested in the inhabitants of said town as a municipal corporation, and all powers granted by the charter, are vested in the mayor and aldermen and common council of said city, to be exercised by concurrent vote, each board having a negative upon the other.

By an act additional to the charter, St. 1850, c. 106, § 7, it is provided that no board or committee of the city council, or of either branch thereof, shall make any contracts in behalf of and binding upon the city, the amount of which contracts shall exceed the specific appropriations of the city council, previously made therefor.

By an ordinance of the city, No. 17, passed on the 16th of June 1848, provision is made for a committee of accounts, to examine and audit all accounts against the city. Section 2 of this ordinance provides that no account or claim against the city shall be received and acted on by the committee, unless such account or claim shall be accompanied with a certificate of the mayor, or of some officer, committee or agent authorized, on behalf of the city, to make the contract or cause the expenditure to be made, that the same is correct. Section 7 provides that the mayor shall not draw any order in payment for any services rendered beyond the sum specifically appropriated therefor by the city council.

These provisions of the charter and of the city ordinance indicate the purpose of this municipal corporation to keep its officers and agents within their strict legal bounds, and are quite inconsistent with the existence of any usage, authorizing individual members of either board of the city council, even if they were a numerical majority, by their unofficial acts to bind the city.

If it be said, that the charter vesting in the mayor and alder‧ men the powers of selectmen, they might, in virtue of those general powers, employ counsel for the city, the answer is two-fold ; first, it is not the law that the selectmen of a town, by virtue of their office, and without any authority from the town, general or special, therefor, may prosecute suits and employ counsel in behalf of the town ; secondly, if the mayor and aldermen had a power so derived, it must be exercised by their official act, at a lawful meeting of the board.

The plaintiff's counsel sought to sustain the authority of the four aldermen to bind the city by their contract with the plain-tiff, by endeavoring to prove the existence of a usage, in com-mittees and officers of the city government, to make the like contracts.   The evidence offered was from a member of the bar, that he had been repeatedly engaged to act on behalf of com-mittees of the board of mayor and aldermen, less in number than a majority, and without any formal vote of the board, and that his bills had been paid by the city ; and that it had been customary to pay bills which committees of the board of mayor and aldermen approved and thought proper charges against the city, without any formal vote of the mayor and aldermen or of the city council.

The first suggestion to be made on this point is, that in cities where the corporation acts only through officers whose powers are limited and defined by law, the court would be slow to sanction any usage enlarging those powers.

Secondly. The powers of towns and cities, that have grown up from usage, are powers of the municipality itself, having their origin in the public exigencies, and being measured by them.

Thirdly. To establish even such a usage, it is not sufficient to show a usage in a single town or city, but a general usage among like towns and cities, and reasonable in itself.

Fourthly. The usage here attempted to be established is in violation of the general law, and the charter and ordinances of the city.   The doing of one wrong does not excuse an‧ other.

Fifthly. There is nothing in the usage attempted to be established, from which an implied contract to pay the plaintiff could be inferred. Even the loose practice testified of does not show that individual members of either board, not acting as committees, have retained counsel, and had their services paid for by the city.

There was then, upon the evidence, no case to go to the jury.

The first, second and fourth prayers for instructions made by the defendant should have been granted. So also, we incline to think, with the third; but this the present aspect of the case does not require us to determine.

With respect to the instructions given, the first perhaps would have been right if the limitation had been added—such customary and usual mode of transacting business not being in violation of the general law, the charter and ordinances of the city, or sound public policy.

If by the words in the instructions given, " acting in their official capacity," had been intended, action at a regular meeting of the board, the question would, as above suggested, have been one of greater difficulty ; though we are by no means prepared to say that the mayor and aldermen, without the concurrence of the common council, could bind the city by such a contract. But as the case shows there was no action at any meeting of the board of mayor and aldermen, the words " official action " must refer to acts done by the four, assuming to act in their capacity as aldermen, and in virtue of their office. As such, for the reasons before suggested, we think the ruling cannot be maintained.

The result is that the verdict is set aside and a

*New trial granted.*